DAVID A. WOOD, #272406
dwood@marshackhays.com
KRISTINE A. THAGARD, #094401
kthagard@marshackhays.com
TINHO MANG, #322146
tmang@marshackhays.com
MARSHACK HAYS WOOD LLP
870 Roosevelt
Irvine, California 92620
Telephone: (949) 333-7777
Facsimile: (949) 333-7778

Attorneys for Chapter 7 Trustee,
WENETA M.A. KOSMALA

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>7910 MAIN STREET PROPERTY, LLC,<br><br>Debtor.<br><br>—————————————————<br><br>WENETA M.A. KOSMALA, in her capacity as Chapter 7 Trustee,<br><br>Plaintiff,<br><br>v.<br><br>MVW GRAPHIC ENTERPRISES, INC., a California Corporation; MICHAEL VACCARO WOOLBRIGHT, an individual; GRAPHIC TEES, an entity of unknown form; AND EXPRESS TEES, an entity of unknown form,<br><br>Defendants. | Case No. 8:22-bk-10877-SC<br><br>Chapter 7<br><br>Adv. No. _____<br><br>ADVERSARY COMPLAINT FOR:<br><br>1) QUIET TITLE;<br>2) BREACH OF CONTRACT (LEASE);<br>3) TURNOVER OF ESTATE PROPERTY; AND<br>4) AVOIDANCE, PRESERVATION, AND RECOVERY OF UNAUTHORIZED POSTPETITION TRANSFER [11 U.S.C. § 549]<br><br>Status Hearing<br>Date:     TO BE SET BY COURT<br>Time:     TO BE SET BY COURT<br>Ctrm:     5C<br>Place:    411 W. Fourth Street<br>          Santa Ana, CA  92701 |

TO THE HONORABLE SCOTT C. CLARKSON UNITED STATES BANKRUPTCY JUDGE,

THE OFFICE OF THE UNITED STATES TRUSTEE AND ALL INTERESTED PARTIES:

WENETA M.A. KOSMALA, in her capacity as Chapter 7 Trustee ("Trustee") of the Bankruptcy Estate ("Estate") of 7910 Main Street Property, LLC ("Debtor"), files this complaint and alleges as follows:

1

COMPLAINT FOR QUIET TITLE, TURNOVER, BREACH OF CONTRACT (LEASE), 549
4891-8741-7832v.1

## Parties

1. Plaintiff is the duly-appointed, qualified, and acting Chapter 7 Trustee of Debtor's bankruptcy estate, upon conversion of the case from Chapter 11 to Chapter 7 on February 7, 2024. Debtor is the owner of real property located at 7910-7940 Main Street, Stanton, CA ("Property"). The Property is a commercial property with approximately 7,964 square feet.

2. Plaintiff alleges that Michael Woolbright ("Mr. Woolbright") is the former managing member of Debtor, an individual residing (perhaps formerly) at 13401 Goldenwest Street, Westminster, California.[1]

3. Plaintiff alleges that MVW Graphic Enterprises, Inc. ("MVW") is a California corporation with is principal place of business located at 7940 Main Street, Stanton, CA or alternatively 13401 Goldenwest Street, Westminster, CA. MVW is, upon information and belief, owned and controlled by Mr. Woolbright.

4. Plaintiff alleges that Graphic Tees, an entity of unknown form, is located at 7920 Main Street, Stanton, California, and is an affiliate of the debtor in this bankruptcy case. Mr. Woolbright is the person in control or ownership of Graphic Tees. There is a suspended corporate entity named Graphic Tees, Inc., registration number 4066122.

5. Plaintiff alleges that Express Tees, an entity of unknown form, is located at 7940 Main Street, Stanton, California,[2] and is an affiliate of the debtor in this bankruptcy case. Mr. Woolbright is the person in control or ownership of Express Tees.

## Statement of Jurisdiction and Venue

6. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 in that this action arises in and relates to the bankruptcy case pending in the United States Bankruptcy Court for the Central District of California, Santa Ana Division, entitled *In re 7910 Main Street Property, LLC*, Bankruptcy Case Number 8:22-bk-10877-SC.

---

[1] This property appears to have been sold on August 1, 2024.
[2] https://www.expresstees.com/

7. Plaintiff, as the Chapter 7 Trustee of the Debtor's bankruptcy Estate, has standing to bring this adversary proceeding pursuant to 11 U.S.C. § 323.

8. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O), and this Court has Constitutional authority to enter a final judgment on these claims. To the extent any claim for relief is determined not to be a non-core proceeding, Plaintiff consents to the entry of final judgment and orders by the Bankruptcy Court.

9. Venue properly lies in the Central District of California in that this adversary proceeding arises in or is related to a case under Title 11 of the United States Code as provided in 28 U.S.C. §§ 1408 and 1409. All defendants are located in the Central District of California.

10. By virtue of the filing of a voluntary petition for bankruptcy, Debtor has consented to the exercise of personal jurisdiction over Debtor in connection with the bankruptcy proceeding.

11. The bankruptcy court has exclusive jurisdiction over property of the bankruptcy estate, wherever located. 28 U.S.C. § 1334(e).

## General Allegations

12. Debtor is the owner of the Property.

13. On May 27, 2022 ("Petition Date"), Debtor filed a voluntary petition for bankruptcy under Chapter 11 of Title 11 of the United States Code, commencing Case No. 8:22-bk-10877-SC ("Case").

14. On September 23, 2022, as Dk. Nos. 40, 41, and 42, Debtor filed its chapter 11 plan of reorganization ("Plan"), disclosure statement, and motion for approval of Chapter 11 disclosure statement. On October 31, 2022, as Dk. No. 45, an objection was filed by the Office of the United States Trustee. On November 23, 2022, as Dk. No. 55, the Court entered an order approving the adequacy of the Debtor's disclosure statement ("DS").

15. Paragraph III.E.4 of the DS states that the Debtor leased 6,000 square feet of the Property "to MVW Graphic Enterprises Inc., for $6,500 per month NNN" and that "Debtor intends to file motions with the court for approval of both[3] leases."

---

[3] One with defendant MVW and another with Causer Productions LLC.

16. On or about November 17, 2022, a document entitled "California Commercial Lease Agreement" was executed by Mr. Woolbright both as "Tenant" and "Landlord" for the Property. A copy of the Lease is enclosed as Exhibit "1" and incorporated by reference.

17. The Lease identifies the "Landlord" as the Debtor.

18. The Lease identifies the "Tenant" as "GraphicTees/ExpressTees."

19. Under paragraph 2 of the Lease, the "Tenant" was obligated to pay a monthly rental charge of $4,500 for the first two years of the Lease, $5,000 for years three and four, and $5,500 for the fifth year of the Lease. Payment was due "in advance on the fifteenth day of each calendar month during the lease term to Landlord at 7910 Main Street, Stanton, CA 90680 or at such other place designated by written notice from Landlord or Tenant."

20. On November 21, 2022, as Dk. No. 51, Debtor filed a motion for order authorizing it to enter into a real property lease with Causer Productions LLC, which motion was granted by order of the Court entered on December 12, 2022, as Docket No. 68. No motion was ever filed seeking approval of a lease with GraphicTees/ExpressTees or MVW.

21. On January 31, 2023, as Dk. No. 76, Debtor filed a confirmation brief in support of the Plan. Page 8 of the confirmation brief stated that "the Plan will be funded with the rental income generated by the Property… total rental income includes $5000.00 from the existing tenant, Graphic Tees/ Express Tees's [sic]" and Mr. Woolbright executed a declaration in support of the confirmation brief.

22. On March 10, 2023, as Dk. No. 86, the Court entered an order confirming the Plan.

23. On February 7, 2024, as Dk. No. 137, the Court entered an order converting the case to Chapter 7.

24. Trustee has never received a single payment for rent from MVW, Mr. Woolbright, Graphic Tees, or Express Tees.

25. Defendants remain in occupancy of the Property.

26. No property taxes have been paid for the Property for 2020, 2021, 2022, 2023, or 2024.

## First Claim for Relief

## Quiet Title; Declaratory Relief

27. Plaintiff incorporates by reference Paragraphs 1 through 26 and realleges these paragraphs as though set forth in full.

28. An actual controversy has arisen and now exists between Plaintiff and Defendants as to the validity, priority, and extent of both Plaintiff and Defendants' respective interests in the Property.

29. Plaintiff seeks a determination and declaratory judgment from the Court regarding the relative validity, priority, and extent of the property rights and claims described above, and also the Lease.

30. Specifically, Plaintiff alleges that the Lease is void and of no effect as an unauthorized use, lease, or disposition of the Property without authorization from the bankruptcy court, after the filing of a bankruptcy petition. *See* 11 U.S.C. § 549(a)(2)(B).

31. Plaintiff alleges that Defendants, and each and every one of them, have no legal, possessory, or equitable rights to possess the Property or otherwise be entitled to any proceeds from the sale of the Property, other than Mr. Woolbright's right to receive a distribution of surplus proceeds (if any) as an equity interest holder in the Debtor.

## Second Claim for Relief

## Breach of Contract; Unjust Enrichment

32. Plaintiff incorporates by reference Paragraphs 1 through 31 and realleges these paragraphs as though set forth in full.

33. Plaintiff is informed and believes that the fair market rental value of the Property is approximately $11,946 per month, at the rate of $1.50 per square foot x 7,964 square feet, as a triple-net lease, under normal commercially reasonable and customary terms for similarly situated commercial property.

34. To the extent that the Lease is found to be a valid, existing, and enforceable contract between Debtor and any of the Defendants, the Lease obligated the tenant to pay the sum of $4,500

per month to the Debtor for the first two years, $5000 per month for years three and four, and $5500 per month commencing in year 5.

35. Defendants have breached the Lease by failing to make any monthly rent payments to the Debtor and failing to make any monthly rent payments to the Trustee.

36. To the extent that the Lease as described in the Plan and DS, specifically with respect to the "NNN" obligations of the tenants, is found to be a valid, existing, and enforceable contract term as between Debtor and any of the Defendants, the Lease obligated the tenants to pay all property taxes, utilities, and insurance payments.

37. Defendants have breached the "NNN" obligations of the Lease by failing to make any property tax payments for the Property. Specifically, the property tax payments for the Property have not been paid since at least 2020.

38. Plaintiff is entitled to an immediate interlocutory judgment terminating any right of possession or occupancy of the Defendants in the Property and terminating any leasehold rights, if any.

39. Plaintiff is entitled to monetary damages either in the amount of: (1) if the Lease is deemed valid, all rental payments which came due and owing and were not paid from 2022 to the date of judgment; or (2) if there is no lease, for the fair market value of the Defendants' use, occupancy, and enjoyment of the Property through the date of their voluntary surrender or involuntary removal from the Property, which is alleged to be approximately $11,946 per month for the 23 months from November 2022 through October 2024, which is **$274,758**, plus an additional $11,946 per month that Defendants remain in occupancy, possession, and use of the Property without compensation to the Estate.

### Third Claim for Relief
### Turnover; Injunctive Relief
### [11 U.S.C. § 542(a); Fed. R. Civ. Proc. 65]

40. Plaintiff incorporates by reference Paragraphs 1 through 39 and realleges these paragraphs as though set forth in full.

41. The Property is property of the bankruptcy estate subject to the Trustee's sole administration and is further subject to the automatic stay of 11 U.S.C. § 362, including a prohibition that unauthorized third parties may not exercise control over Estate property.

42. Pursuant to 11 U.S.C. § 542(a), and in the absence of any valid, enforceable, and existing lease for the benefit of any of the Defendants, Plaintiff is entitled to a judgment for possession of the Property and to remove all unauthorized occupants from the Property, including non-fixture personal property belonging to third parties.

43. To ensure that no diminution of the Estate occurs and no damage to the Property results from either the: (1) voluntary departure of Defendants from the Property; or (2) involuntary removal of Defendants from the Property, Plaintiff is entitled to immediate and specific injunctive relief against Defendants prohibiting them from damaging the Property in any way. A separate motion will be filed.

## Fourth Claim for Relief

## Avoidance, Preservation, and Recovery of Unauthorized Postpetition Transfers

## [11 U.S.C. §§ 549, 550, 551]

44. Plaintiff incorporates by reference Paragraphs 1 through 43 and realleges these paragraphs as though set forth in full.

45. To the extent any lease was granted, or valuable rights in the Property were transferred, to Defendants after the filing of the bankruptcy petition, such transfers were not made with the authorization of the bankruptcy court.

46. Any unauthorized post-petition transfers are avoidable by the Plaintiff pursuant to 11 U.S.C. § 549.

47. Plaintiff is informed and believes that no funds were transferred to Defendants by Debtor, and therefore an avoidance remedy is inadequate to make the Estate whole. Plaintiff is therefore entitled to a monetary judgment against Defendants for the value of the postpetition unauthorized transfer(s) which are avoided, recovered, and preserved.

## Prayer

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

### First Claim for Relief

1. For entry of a declaratory judgment that Defendants have no valid, enforceable, and existing right of possession, occupancy, or control of the Property superior to that of the Plaintiff, including that there is no current, valid, existing lease for the Property enforceable against Plaintiff.

2. For entry of a declaratory judgment that the Lease appended hereto as Exhibit "1" and as otherwise described in Debtor's plan of reorganization, confirmation brief, and disclosure statement is null and void and of no effect.

3. For entry of a declaratory judgment that Defendants have no legal, possessory, or equitable rights to possess the Property or otherwise be entitled to any proceeds from the sale of the Property, other than Mr. Woolbright's right to receive a distribution of surplus proceeds (if any) as an equity interest holder in the Debtor.

### Second Claim for Relief

4. For entry of a monetary judgment in an amount equal to the unpaid contractual or equitable rights in the Property which Defendants continue to occupy, possess, and control without consideration to the Estate, either in the amount of the unpaid contractual rent to the extent the Court finds a valid lease contract; or alternatively, in an amount equal to the fair market rental value of the Property for the entire period that Defendants have been occupying the Property without consideration to the Estate.

5. For entry of a monetary judgment which includes an ongoing occupancy charge against Defendants remaining in unlawful occupancy and possession of the Property.

6. For entry of an interlocutory judgment terminating any right of possession, occupancy, or control of the Property that Defendants may have, and permitting Plaintiff to exercise all remedies available under applicable law to remove unauthorized occupants and their non-fixture personal property and personal effects from the Property.

7. For application of Federal Rule of Civil Procedure 70 (made applicable to adversary proceedings by FRBP 7070) permitting Plaintiff to obtain a writ of assistance to remove any unauthorized occupants and their belongings from the Property.

### Third Claim for Relief

8. For entry of an injunctive order compelling Defendants to turn over the Property to the Trustee.

9. By separate motion, for entry of a preliminary injunction prohibiting Defendants from damaging, defacing, devaluing, or destroying any portion of the Property, enforceable by appropriate coercive conditions including but not limited to the imposition of attorneys' fees against any party violating the automatic bankruptcy stay by unlawfully interfering with Trustee's administration of bankruptcy estate property.

### Fourth Claim for Relief

10. For entry of a judgment avoiding any unauthorized post-petition transfer of assets, rights, or interests of the Debtor in the Property to the Defendants.

11. For entry of a monetary judgment in an amount equal to the value of the avoided post-petition transfers to Defendants.

12. For preservation and recovery of such amounts for the benefit of the Estate.

### On All Claims for Relief

13. For reasonable fees and costs incurred by Plaintiff in prosecuting this action to the maximum extent allowable under law;

14. For imposition of pre-judgment interest where the Court deems appropriate and necessary to make the Estate whole for Defendants' conduct; and

15. For such other and further relief as the Court may deem just and proper.

DATED: October 18, 2024    MARSHACK HAYS WOOD LLP

By: */s/ Kristine A. Thagard*
DAVID A. WOOD
KRISTINE A. THAGARD
TINHO MANG
Attorneys for Chapter 7 Trustee,
WENETA M.A. KOSMALA

# EXHIBIT 1

7910-7940 Main Street

# California Commercial Lease Agreement

This Commercial Lease Agreement ("Lease") is new and updated to account for modification of space made and effective, by and between 7910 Main Street Property, LLC ("Landlord") and GraphicTees / ExpressTees ("Tenant"). Landlord is the owner of land and improvements commonly known and numbered as and legally described as follows (the "Building"): **7910-7940 Main Street, Stanton, CA 90680**

THEREFORE, in consideration of the mutual promises herein, contained and other good and valuable consideration, it is agreed:

**1. Term.**

Landlord hereby leases a portion of the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an "Initial Term" beginning January 1, 2023 and ending December 31, June 30, 2029. Tenant has the option to renew for 5 additional years at an increase of the CPI annually.

**2. Rental.**

In consideration of long term occupancy and requested modification of space, the reduced rental space and sharing the exclusive yard space  Years one and two, the rental charges for the property is $4,500.00 per month.  Years Three to Four the monthly rent increases to $5,000.00,  Year Five the rent is $5,500.00. Any additional extensions will be subject to an annual cost of living increase (CPI)  This payment shall be due in advance on the fifteenth day of each calendar month during the lease term to Landlord at 7910 Main Street, Stanton, CA 90680 or at such other place designated by written notice from Landlord or Tenant. The rental payment amount for any partial calendar months included in the lease term shall be prorated on a daily basis.

**3. Use**

Notwithstanding the forgoing, Tenant shall not use the Leased Premises for the purposes of storing, manufacturing or selling any explosives, flammables or other inherently dangerous substance, chemical, thing or device.  Any changes in use must be approved in writing by landlord. There is specific value in the property maintaining the same or similar use.

**4. Sublease and Assignment.**

Tenant shall have the right without Landlord's consent, to assign this Lease to a corporation with which Tenant may merge or consolidate, to any subsidiary of Tenant, to any corporation under common control with Tenant, or to a purchaser of substantially all of Tenant's assets. Except as set forth above, Tenant shall not sublease all or any part of the Leased Premises, or assign this Lease in whole or in part without Landlord's consent, such consent not to be unreasonably withheld or delayed.

**5. Repairs.**

During the Lease term, Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs shall include such items as routine repairs of floors, walls, ceilings, and other parts of the Leased Premises damaged or worn through normal occupancy, except for major mechanical systems or the roof, subject to the obligations of the parties otherwise set forth in this Lease.

**6. Alterations and Improvements.**

Tenant, at Tenant's expense, shall have the right following Landlord's consent to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Tenant shall have the right to place and install personal property,

7910-7940 Main Street

trade fixtures, equipment and other temporary installations in and upon the Leased Premises, and fasten the same to the premises. All personal property, equipment, machinery, trade fixtures and temporary installations, whether acquired by Tenant at the commencement of the Lease term or placed or installed on the Leased Premises by Tenant thereafter, shall remain Tenant's property free and clear of any claim by Landlord. Tenant shall have the right to remove the same at any time during the term of this Lease provided that all damage to the Leased Premises caused by such removal shall be repaired by Tenant at Tenant's expense.

**7. Property Taxes.**

Landlord shall pay all general real estate taxes and installments of special assessments coming due during the Lease term on the Leased Premises, and all personal property taxes with respect to Landlord's personal property, if any, on the Leased Premises. Landlord shall bill Tenant for their share of property taxes on a semiannual basis to account for the total tax obligation of the property. Tenant shall be responsible for paying all personal property taxes with respect to Tenant's personal property at the Leased Premises.

**8. Insurance.**

A. If the Leased Premises or any other part of the Building is damaged by fire or other casualty resulting from any act or negligence of Tenant or any of Tenant's agents, employees or invitees, rent shall not be diminished or abated while such damages are under repair, and Tenant shall be responsible for the costs of repair not covered by insurance.

B. Landlord shall maintain fire and extended coverage insurance on the Building and the Leased Premises in such amounts as Landlord shall deem appropriate. The total amount of insurance shall be billed to the Tenants account on a biannual basis. Tenant shall also be responsible, at its expense, for fire and extended coverage insurance on all of its personal property, including removable trade fixtures, located in the Leased Premises.

C. Tenant and Landlord shall, each at its own expense, maintain a policy or policies of comprehensive general liability insurance with respect to the respective activities of each in the Building with the premiums thereon fully paid on or before due date, issued by and binding upon some insurance company approved by Landlord, such insurance to afford minimum protection of not less than $1,000,000 combined single limit coverage of bodily injury, property damage or combination thereof. Landlord shall be listed as an additional insured on Tenant's policy or policies of comprehensive general liability insurance, and Tenant shall provide Landlord with current Certificates of Insurance evidencing Tenant's compliance with this Paragraph. Tenant shall obtain the agreement of Tenant's insurers to notify Landlord that a policy is due to expire at least (10) days prior to such expiration. Landlord shall not be required to maintain insurance against thefts within the Leased Premises or the Building.

**9. Utilities.**

With modification to account for multiple tenants the utilities will be estimated as close as possible based upon consumption. Landlord will pay water and sewer and Tenant shall pay all charges for gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. Metering of electrical services will allocate to each tenant in the property. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilize excessive electrical energy or which may, in Landlord's reasonable opinion, overload the wiring or interfere with electrical services to other tenants. In the event of water consumption going up, tenant will be responsible for any additional charges.

7910-7940 Main Street

### 10. Signs.

Following Landlord's consent, Tenant shall have the right to place on the Leased Premises, at locations selected by Tenant, any signs which are permitted by applicable zoning ordinances and private restrictions. Landlord may refuse consent to any proposed signage that is in Landlord's opinion too large, deceptive, unattractive or otherwise inconsistent with or inappropriate to the Leased Premises or use of any other tenant. Landlord shall assist and cooperate with Tenant in obtaining any necessary permission from governmental authorities or adjoining owners and occupants for Tenant to place or construct the foregoing signs. Tenant shall repair all damage to the Leased Premises resulting from the removal of signs installed by Tenant.

### 11. Entry.

Landlord shall have the right to enter upon the Leased Premises at reasonable hours to inspect the same, provided Landlord shall not thereby unreasonably interfere with Tenant's business on the Leased Premises.

### 12. Parking.

During the term of this Lease, Tenant shall have the non-exclusive use in common with Landlord, other tenants of the Building, their guests and invitees, of the non-reserved common automobile parking areas, driveways, and footways, subject to rules and regulations for the use thereof as prescribed from time to time by Landlord. Landlord reserves the right to designate parking areas within the Building or in reasonable proximity thereto, for Tenant and Tenant's agents and employees. Four spaces in the rear fenced yard are allocated to tenant in 7910's office space as their exclusive use.

### 13. Building Rules.

Tenant will comply with the rules of the Building adopted and altered by Landlord from time to time and will cause all of its agents, employees, invitees and visitors to do so; all changes to such rules will be sent by Landlord to Tenant in writing. There are currently no Building Rules.

### 14. Damage and Destruction.

Subject to Section 8 A. above, if the Leased Premises or any part thereof or any appurtenance thereto is so damaged by fire, casualty or structural defects that the same cannot be used for Tenant's purposes, then Tenant shall have the right within ninety (90) days following damage to elect by notice to Landlord to terminate this Lease as of the date of such damage. In the event of minor damage to any part of the Leased Premises, and if such damage does not render the Leased Premises unusable for Tenant's purposes, Landlord shall promptly repair such damage at the cost of the Landlord. In making the repairs called for in this paragraph, Landlord shall not be liable for any delays resulting from strikes applicable governmental restrictions, inability to obtain necessary materials or labor or other matters which are beyond the reasonable control of Landlord. Tenant shall be relieved from paying rent and other charges during any portion of the Lease term that the Leased Premises are inoperable or unfit for occupancy, or use, in whole or in part, for Tenant's purposes. Rentals and other charges paid in advance for any such periods shall be credited on the next ensuing payments, if any, but if no further payments are to be made, any such advance payments shall be refunded to Tenant. The provisions of this paragraph extend not only to the matters aforesaid, but also to any occurrence which is beyond Tenant's reasonable control and which renders the Leased Premises, or any appurtenance thereto, inoperable or unfit for occupancy or use, in whole or in part, for Tenant's purposes.

### 15. Quiet Possession.

Landlord covenants and warrants that upon performance by Tenant of its obligations hereunder, Landlord will keep and maintain Tenant in exclusive, quiet, peaceable and undisturbed and uninterrupted possession of the Leased Premises during the term of this Lease.

7910-7940 Main Street

### 16. Condemnation.

If any legally, constituted authority condemns the Building or such part thereof which shall make the Leased Premises unsuitable for leasing, this Lease shall cease when the public authority takes possession, and Landlord and Tenant shall account for rental as of that date. Such termination shall be without prejudice to the rights of either party to recover compensation from the condemning authority for any loss or damage caused by the condemnation. Neither party shall have any rights in or to any award made to the other by the condemning authority.

### 17. Subordination.

Tenant accepts this Lease subject and subordinate to any mortgage, deed of trust or other lien presently existing or hereafter arising upon the Leased Premises, or upon the Building and to any renewals, refinancing and extensions thereof, but Tenant agrees that any such mortgagee shall have the right at any time to subordinate such mortgage, deed of trust or other lien to this Lease on such terms and subject to such conditions as such mortgagee may deem appropriate in its discretion. Landlord is hereby irrevocably vested with full power and authority to subordinate this Lease to any mortgage, deed of trust or other lien now existing or hereafter placed upon the Leased Premises of the Building, and Tenant agrees upon demand to execute such further instruments subordinating this Lease or attuning to the holder of any such liens as Landlord may request. In the event that Tenant should fail to execute any instrument of subordination herein required to be executed by Tenant promptly as requested, Tenant hereby irrevocably constitutes Landlord as its attorney-in-fact to execute such instrument in Tenant's name, place and stead, it being agreed that such power is one coupled with an interest. Tenant agrees that it will from time to time upon request by Landlord execute and deliver to such persons as Landlord shall request a statement in recordable form certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect as so modified), stating the dates to which rent and other charges payable under this Lease have been paid, stating that Landlord is not in default hereunder (or if Tenant alleges a default stating the nature of such alleged default) and further stating such other matters as Landlord shall reasonably require.

### 18. Security Deposit.

The Security Deposit shall be held by Landlord without liability for interest and as security for the performance by Tenant of Tenant's covenants and obligations under this Lease, it being expressly understood that the Security Deposit shall not be considered an advance payment of rental or a measure of Landlord's damages in case of default by Tenant. Unless otherwise provided by mandatory non-waivable law or regulation, Landlord may commingle the Security Deposit with Landlord's other funds. Landlord may, from time to time, without prejudice to any other remedy, use the Security Deposit to the extent necessary to make good any arrearages of rent or to satisfy any other covenant or obligation of Tenant hereunder. Following any such application of the Security Deposit, Tenant shall pay to Landlord on demand the amount so applied in order to restore the Security Deposit to its original amount. If Tenant is not in default at the termination of this Lease, the balance of the Security Deposit remaining after any such application shall be returned by Landlord to Tenant. If Landlord transfers its interest in the Premises during the term of this Lease, Landlord may assign the Security Deposit to the transferee and thereafter shall have no further liability for the return of such Security Deposit.

### 19. Notice.

Any notice required or permitted under this Lease shall be deemed sufficiently given or served if sent by United States certified mail, return receipt requested, addressed as follows:  If to Landlord to: 7910 Main Street Property, LLC, 7910 Main Street, Stanton, CA 90680:  If to Tenant to: Graphic Tees / ExpressTees 7940 Main Street, Stanton, CA 90680  Landlord and Tenant shall each have the right from time to time to change the place notice is to be given under this paragraph by written notice thereof to the other party.

7910-7940 Main Street

### 20. Brokers.

Tenant represents that Tenant was not shown the Premises by any real estate broker or agent and that Tenant has not otherwise engaged in, any activity which could form the basis for a claim for real estate commission, brokerage fee, finder's fee or other similar charge, in connection with this Lease.

### 21. Waiver.

No waiver of any default of Landlord or Tenant hereunder shall be implied from any omission to take any action on account of such default if such default persists or is repeated, and no express waiver shall affect any default other than the default specified in the express waiver and that only for the time and to the extent therein stated. One or more waivers by Landlord or Tenant shall not be construed as a waiver of a subsequent breach of the same covenant, term or condition.

### 22. Memorandum of Lease.

The parties hereto contemplate that this Lease should not and shall not be filed for record, but in lieu thereof, at the request of either party, Landlord and Tenant shall execute a Memorandum of Lease to be recorded for the purpose of giving record notice of the appropriate provisions of this Lease.

### 23. Headings.

The headings used in this Lease are for convenience of the parties only and shall not be considered in interpreting the meaning of any provision of this Lease.

### 24. Successors.

The provisions of this Lease shall extend to and be binding upon Landlord and Tenant and their respective legal representatives, successors and assigns.

### 25. Consent.

Landlord shall not unreasonably withhold or delay its consent with respect to any matter for which Landlord's consent is required or desirable under this Lease.

### 26. Performance.

If there is a default with respect to any of Landlord's covenants, warranties or representations under this Lease, and if the default continues more than fifteen (15) days after notice in writing from Tenant to Landlord specifying the default, Tenant may, at its option and without affecting any other remedy hereunder, cure such default and deduct the cost thereof from the next accruing installment or installments of rent payable hereunder until Tenant shall have been fully reimbursed for such expenditures, together with interest thereon at a rate equal to the lessor of twelve percent (12%) per annum or the then highest lawful rate. If this Lease terminates prior to Tenant's receiving full reimbursement, Landlord shall pay the unreimbursed balance plus accrued interest to Tenant on demand.

### 27. Compliance with Law.

Tenant shall comply with all laws, orders, ordinances and other public requirements now or hereafter pertaining to Tenant's use of the Leased Premises. Landlord shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Leased Premises.

### 28. Right of First Refusal.

7910 Main Street Property, LLC Commercial Lease

Page 5 of 6

7910-7940 Main Street

Tenant shall have the right of first refusal to purchase the property if the property is sold or converted in compliance with all laws, orders, ordinances and other public requirements. This option is offered in consideration for cooperation in showing and making accommodations

## 29. Final Agreement.

This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof. This Agreement may be modified only by a further writing that is duly executed by both parties.

## 30. Governing Law.

This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of California.

IN WITNESS WHEREOF, the parties have executed this Lease as of the day and year first above written.

Tenant: _[signature]_    Date 11/17/22
By: Michael V. Woolbright,    Title    President

Landlord: _[signature]_    Date 11/17/22
By: Michael V. Woolbright    Title    Managing Member